Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Fernando Ramírez Sainz<br><br>Peticionario<br><br>v.<br><br>Alexander Cabanillas, Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Peticionarias | Certiorari<br><br>2009 TSPR 151<br><br>177 DPR \_\_\_\_ |

Número del Caso: CC-2005-553

Fecha: 6 de octubre de 2009

Tribunal de Apelaciones:

> Región Judicial de San Juan-Panel II

Juez Ponente:
>              Hon. Troadio González Vargas

Abogado de la Parte Peticionario:

>              Lcdo. Emilio E. Sole de la Paz

Abogado de la Parte Recurrida:

>              Lcdo. Jorge Bermúdez Torregrosa

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correccione s del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónic a se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Fernando Ramírez Sainz<br>Peticionario<br><br>v.<br><br>Alexander Cabanillas, Fulana de Tal y la Sociedad legal de Gananciales compuesta por ambos<br>Recurridos | *Certiorari*<br><br>CC-2005-553 |

Opinión del Tribunal emitida por la Jueza Asociada señora Fiol Matta

> *Los nuevos caracteres del marco social en el que se desarrollan las relaciones privadas internacionales, como consecuencia de fenómenos como el creciente alcance global de las actividades empresariales y de los medios de comunicación así como las características de las migraciones actuales, condicionan los presupuestos del Derecho Internacional Privado y hacen aconsejable revisar el contenido y aplicación de sus normas*. P.A. De Miguel de Asencio, <u>El Derecho internacional privado ante la Globalización</u>, Anuario Español de Derecho Internacional Privado, Madrid, T. 1, 2001, pág. 37.

En San Juan, Puerto Rico, a 6 de octubre de 2009.

Debemos decidir si incorporamos a nuestro ordenamiento jurídico procesal la doctrina del *common law* de *forum non conveniens*. Si lo hacemos, tenemos entonces que resolver si de acuerdo a dicha doctrina, una controversia sobre servicios profesionales de abogado, que surge de un contrato suscrito en República Dominicana por un abogado domiciliado de ese

país y un ciudadano estadounidense domiciliado en Puerto Rico, y que versa sobre un inmueble sito en la República Dominicana, debe ser litigada en los tribunales de Puerto Rico o en los de la Isla vecina.

I

El 11 de agosto de 1995, el Lcdo. Fernando Ramírez Sainz y el Sr. Alexander Cabanillas Terc suscribieron un contrato de servicios profesionales *cuota litis* y un poder general, en la ciudad de Santo Domingo de Guzmán.[1] El licenciado Ramírez Sainz se comprometió a brindar sus servicios profesionales como abogado a favor del señor Cabanillas Terc, en particular, para cobrar una suma de dinero que el Sr. Julio de la Cruz Rodríguez Ramos le adeudaba. El recobro se podría realizar mediante el pago en efectivo o la ejecución de una propiedad que garantizaba la deuda. Por su parte, el señor Cabanillas se obligó a pagarle al licenciado Ramírez Sainz, en concepto de honorarios, el treinta por ciento de la suma o valor recuperado, más los gastos que conllevara la tramitación del cobro. Los señores Ramírez Sainz y Rodríguez Ramos son ciudadanos dominicanos, domiciliados en la República Dominicana. Por otro lado, el señor Cabanillas Terc es ciudadano estadounidense, domiciliado en Puerto Rico.

---

[1] El contrato de *cuota litis* es un acuerdo contingente mediante el cual un acreedor de una suma de dinero difícil de obtener, le promete una porción de ésta a otra persona que debe cobrarla. Véase: *Pactum de Quota Litis* en Legal Dictionary, www.law-dictionary.org, 2009 (Consulta de 17 de febrero de 2009).

No fue posible cobrar la deuda en activos líquidos, por cuya razón se ejecutó la propiedad que la garantizaba y, a través de dicha gestión profesional, el abogado obtuvo el certificado de título de la propiedad en controversia a favor del cliente. Una vez entendió que había completado su obligación, el licenciado Ramírez Sainz le envió al señor Cabanillas Terc, mediante carta fechada el 2 de octubre de 1997, un "estado de cuenta" que reclamaba el pago de la suma de $38,400.00 en concepto de honorarios de abogado más $3,257.26 en concepto de gastos para un total de $41,657.26. El 14 de octubre de 1997, el señor Cabanillas Terc contestó la misiva enviada por el letrado, aceptando la deuda. Además propuso pagarle $1,500.00 mensuales en lo que restaba del año 1997, ya que luego podría "aligerar el pago".

El señor Cabanillas Terc realizó varios pagos parciales para satisfacer la suma adeudada.[2] Sin embargo, en el mes de febrero de 1998 dejó de hacerle desembolsos al licenciado Ramírez Sainz porque alegadamente se había trabado una controversia en el Tribunal de Tierras de la República Dominicana, en la cual se impugnaba el título de la propiedad ejecutada. Entre los meses de marzo y abril de 1998, el licenciado Ramírez Sainz le envió una comunicación al señor Cabanillas Terc informándole sobre el caso presentado en la República vecina y, además, le indicó que si lo deseaba podía

---

[2] El último estado de cuenta enviado por el letrado al señor Cabanillas Terc refleja la acreditación de los pagos realizados ascendientes a $6,000.00, restando por satisfacer $33,907.26.

representarlo en dicho pleito, por lo cual le cobraría honorarios ascendentes a otro 30% del valor de la propiedad ejecutada. El señor Cabanillas Terc entendió que la representación legal en el pleito de impugnación de título estaba incluida en la primera transacción porque en el contrato *cuota litis* el licenciado Ramírez Sainz se había obligado a entregarle un "título limpio". En desacuerdo con esta interpretación del contrato, el licenciado Ramírez Sainz le envió una reclamación extrajudicial por los honorarios no satisfechos, el 5 de abril de 1999.

Al no recibir respuesta, el 12 de agosto de 1999 el licenciado Ramírez Sainz presentó una demanda sobre cobro de dinero contra el señor Cabanillas Terc, su esposa fulana de tal y la sociedad de bienes gananciales compuesta por ambos, en el Tribunal de Primera Instancia, Sala Superior de San Juan.[3] Oportunamente, el señor Cabanillas Terc contestó la demanda. Levantó como defensas afirmativas que el tribunal carecía de jurisdicción porque el acuerdo entre las partes tuvo lugar en la República Dominicana y el inmueble sobre el cual versó está ubicado allí. Adujo, además, que el licenciado Ramírez Sainz no cumplió las obligaciones contraídas en el acuerdo. Así las cosas, se llevó a cabo el descubrimiento de prueba que incluyó deposiciones a ambas partes, interrogatorios, requerimientos de admisiones y solicitudes de producción de documentos.

---

[3] El 11 de enero de 2000, en cumplimiento de una orden del tribunal de instancia, el licenciado Ramírez Sainz prestó fianza de no residente.

Posteriormente, el licenciado Ramírez Sainz solicitó que se dictara sentencia sumaria a su favor. Alegó que el señor Cabanillas Terc había reconocido la deuda. Además, indicó que no había controversia real sustancial en cuanto a que él había cumplido con su obligación contractual de cobrar la acreencia del demandado. Unió a su moción un certificado de título expedido por el Registro de Títulos de la República Dominicana, en el que aparece la propiedad inscrita a nombre del demandado, y una certificación del Tribunal de Tierras de República Dominicana, de la cual surge que el terreno está registrado a nombre del señor Cabanillas Terc.

El demandado se opuso a la solicitud de sentencia sumaria y señaló que la inscripción de la propiedad se había impugnado ante el Tribunal de Tierras de la República Dominicana, debido a que el abogado no había realizado su gestión adecuadamente. Por lo tanto, subsistía una controversia en torno a los servicios profesionales prestados por el demandante, es decir, sobre el cumplimiento de la obligación contractual por parte del licenciado Ramírez Sainz. Junto a la moción en oposición se sometió una carta suscrita por el Sr. M.A. Báez Brito, dirigida a los jueces del Tribunal de Tierras, en la cual se impugna la inscripción de la propiedad a favor del señor Cabanillas Terc.

Luego de celebrar una vista, el Tribunal de Primera Instancia denegó la moción de sentencia sumaria y ordenó la paralización de los procedimientos hasta tanto el Tribunal de Tierras de la República Dominicana emitiera una determinación

con respecto a la impugnación de la inscripción de la propiedad. El licenciado Ramírez Sainz acudió, mediante recurso de *certiorari,* al Tribunal de Apelaciones, quién expidió el auto y modificó la resolución del tribunal de instancia. Confirmó la determinación de denegar la solicitud de sentencia sumaria, pero revocó lo referente a la paralización de los procedimientos.

Una vez devuelto el caso al tribunal de instancia, el licenciado Ramírez Sainz presentó una nueva moción de sentencia sumaria. En ésta alegó que el Tribunal de Tierras había resuelto la impugnación de la inscripción de manera favorable al señor Cabanillas Terc y presentó documentos acreditativos de que el proceso seguido en la República Dominicana había concluido. El demandado se opuso a la solicitud de sentencia sumaria alegando que no se había demostrado que la resolución del Tribunal de Tierras fuese firme. Adujo, además, que la suma adeudada aun no estaba determinada puesto que existía controversia sobre el valor del predio ejecutado, 30% del cual representaba los honorarios a ser satisfechos.

Con el propósito de aclarar el valor del inmueble ejecutado, el licenciado Ramírez Sainz sometió una evaluación preparada por un tasador certificado de la República Dominicana. El señor Cabanillas Terc se opuso a dicho informe, por lo que ambas partes acordaron y aceptaron realizar una nueva tasación, por otro profesional, sobre la cual se establecerían los honorarios que venía obligado a

satisfacer el demandado. El Ing. Fabio García Molina realizó la segunda tasación y concluyó que la propiedad tenía, para el año 1997, un valor de $152,000.00.

El demandante enmendó entonces su solicitud de sentencia sumaria, a lo cual respondió el señor Cabanillas Terc alegando que se había presentado una segunda impugnación de inscripción del predio en los tribunales dominicanos, por lo cual la controversia continuaba. Además, solicitó la desestimación de la demanda fundamentándose en la doctrina de *forum non conveniens.* El 17 de marzo de 2004, el Tribunal de Primera Instancia declaró con lugar la segunda solicitud de sentencia sumaria, promovida por el licenciado Ramírez Sainz y ordenó al señor Cabanillas Terc pagar $41,107.26,[4] así como intereses por mora a ser computados desde que se le requirió extrajudicialmente el pago de la deuda, más intereses legales desde la fecha de la sentencia y hasta que ésta sea satisfecha en su totalidad. Se le ordenó también pagar las costas y los gastos en los que incurrió el demandante, más $1,000.00 en concepto de honorarios de abogado. Entendió el foro sentenciador que la deuda era líquida y exigible desde

---

[4] El desglose de la deuda es el siguiente: $1,507.26 por los gastos incurridos en la tramitación del proceso de cobro que realizó el demandante, más $45,600.00 en concepto de honorarios de abogados, menos los pagos parciales realizados por el señor Cabanillas Terc que ascienden a $6,000.00, para un total de $41,107.26. Los honorarios de abogados se calcularon a partir del 30% de los $152,000.00, que es el valor que el tasador seleccionado por las partes le dio a la propiedad ejecutada.

que el abogado cumplió con la obligación contractual que había asumido con el demandado.[5]

El señor Cabanillas Terc recurrió al Tribunal de Apelaciones. Entre otros asuntos, adujo que la demanda debía desestimarse, fundamentándose en la doctrina de *forum non conveniens,* por ser los tribunales de la República Dominicana los más apropiados o convenientes para atender esta controversia. Al respecto, afirmó que durante el proceso surgieron varias situaciones en la Isla vecina que son esenciales a la solución de la controversia trabada en los tribunales puertorriqueños. La última de éstas consiste en que, alegadamente, los trabajos de deslinde llevados a cabo por el agrimensor contratado por el licenciado Ramírez Sainz se ejecutaron ilegal e inapropiadamente.[6] Por esto, el demandado arguye que los servicios prestados por el abogado han sido ineficaces para hacer efectivo su crédito, ya que no

---

[5] El Tribunal de Primera Instancia resolvió la presente controversia aplicando la ley de Puerto Rico, pues en momento alguno se ha argumentado que la ley aplicable sea la vigente en la República Dominicana.

En cuanto al segundo procedimiento de impugnación de título ante el Tribunal de Tierras de la República Dominicana, el tribunal de instancia no hizo expresión alguna. No obstante, surge del expediente que el tribunal de la hermana República desestimó el pleito sobre impugnación fundamentándose en la doctrina de cosa juzgada. Además, el licenciado Ramírez Sainz le presentó al Tribunal de Apelaciones certificaciones sobre la inexistencia de procedimientos apelativos o de casación pendientes en la República Dominicana.

[6] Surge del expediente que en la República Dominicana el procedimiento de "deslinde" es lo que en nuestro derecho denominamos segregación.

tiene posesión física ni puede hacer uso de la propiedad que el licenciado Ramírez Sainz gestionó a su favor.[7]

El Tribunal de Apelaciones revocó la sentencia sumaria dictada por el tribunal de instancia y le ordenó determinar si es el foro más apropiado para resolver el litigio o si el foro más conveniente en este caso resulta ser un tribunal de la República Dominicana. Si concluyera el Tribunal de Primera Instancia que efectivamente es el foro más apropiado, el tribunal intermedio apelativo le ordenó dilucidar la controversia en una vista plenaria.

Inconforme con la decisión del Tribunal de Apelaciones, el licenciado Ramírez Sainz recurre y plantea que ese foro erró al determinar que convenía auscultar la aplicabilidad de la doctrina de *forum non conveniens*, variando con ello la ley del caso. El demandado expone, además, que los documentos en los cuales se fundamentó el tribunal apelativo para concluir que había controversia sobre

---

[7] El señor Cabanillas Terc presentó unos documentos para sustentar la alegación a los efectos de que tuvo que suscribir un poder a favor del señor Rodríguez Ramos, su otrora deudor, mediante el cual le autorizaba a gestionar, en los foros dominicanos correspondientes, la refundición (agrupación) de la parcela que había previamente deslindado (segregado) a su favor el licenciado Ramírez Sainz, a fin de que la finca volviera a su estado original. Ello en vista de que tal deslinde (segregación) había afectado el "derecho de paso" (servidumbre de paso) a otras parcelas, dejándolas enclavadas, lo que había generado "disgusto" entre sus titulares. El demandado sostuvo que se vio precisado a llegar a dicho acuerdo con la empresa Playa Flamingo, dueña de los demás predios alegadamente afectados y cuyo presidente es el señor Rodríguez Ramos, para evitar controversias legales. Según el demandado, Playa Flamingo le indicó que las gestiones de venta no han tenido fruto debido al deslinde ilegal y, por ello, lo han amenazado con demandarle.

hechos esenciales, no fueron presentados ante el Tribunal de Primera Instancia.

II

En Puerto Rico la doctrina de *forum non conveniens* no ha sido objeto de atención detenida. No hay legislación al respecto y el único caso en el que se menciona es el de <u>Marrero Reyes v. García Ramírez</u>, 105 D.P.R. 90 (1976), que trataba sobre una petición de custodia que presentó la madre de una menor que vivía con los abuelos en el extranjero. Allí expresamos, primeramente, que "[l]os tribunales debemos sopesar diversos factores para determinar si, aun gozando de jurisdicción, debemos ejercerla," para luego indicar "que es enteramente posible que ciertos factores inviten a invocar la doctrina de *forum non conveniens*, pero que el peso de otros aconsejen el ejercicio de jurisdicción".[8] No obstante, el Tribunal no discute la doctrina, ni la explica, y resuelve de acuerdo al principio del bienestar del menor. Siendo ello así, nos corresponde precisar ahora los contornos de esta figura y decidir sobre su aplicación en nuestra jurisdicción. Para ello, debemos recurrir al derecho internacional privado y al derecho comparado, pues éste "no sólo nos ayuda a entender mejor el derecho como creación cultural, sino que proporciona una base intelectual para la interpretación y el análisis de los distintos sistemas jurídicos, lo que en

---

[8] <u>Marrero Reyes v. García Ramírez</u>, 105 D.P.R. 90, 100 (1976).

definitiva ayuda también a entender e interpretar el sistema

propio".[9]

A

El derecho internacional privado es la disciplina que

estudia y explica las leyes que aplican a una controversia

entre personas de ciudadanía o domicilio diferente, o, en

general, a casos vinculados a más de un Estado[10] y determina

cuál foro judicial debe resolver esos casos.[11] También

establece el procedimiento para reconocer un acto realizado

[9] P. Lerner, Sobre armonización, derecho comparado y la relación entre ambos, Boletín Mexicano de Derecho comparado, año XXXVII, núm. 111, septiembre-diciembre 2004, pág. 919. El tema de rehusar ejercer jurisdicción es uno de enorme importancia práctica e interés académico, al cual un enfoque comparativo es particularmente relevante por las diferencias entre la tradición civilista y la del common law y por las diferencias entre los países que pertenecen a esta última cultura. J.J. Fawcett, Declining Jurisdiction in Private International Law, Oxford, Clarendon Press, 1995, pág. 2.

[10] Comúnmente denominado en Estados Unidos como "conflicts of law".
    El concepto del Estado en el derecho internacional privado no es el mismo que en el derecho internacional público. En la disciplina que regula las relaciones internacionales privadas, Estado es cualquier país "y las subdivisiones territoriales del mismo que, con respecto al problema que se trate, posea un sistema de derecho propio". Artículo 3 del Proyecto para la Codificación del Derecho Internacional Privado de Puerto Rico de la Academia de Legislación y Jurisprudencia Puertorriqueña (1991). Sobre este aspecto, el Black's Law Dictionary indica que "an American state different from the one under discussion" es entendido como un Estado extranjero o "foreign state". Black's Law Dictionary, supra, pág. 676. Por lo tanto, Puerto Rico es un Estado para el Derecho Internacional Privado, al igual que los estados de la unión americana.

[11] A. Nussbaum, Principios de Derecho Internacional Privado, Buenos Aires, Editorial DePalma, 1947, pág. 7-8. Véase además: Rigaux, Derecho Internacional Privado: Parte General, Madrid, Editorial Civitas, 1985, pág. 99, 100-101; J.M. Rosario, Tratado de Derecho Internacional Privado, República Dominicana, Ediciones Jurídicas Trajano Potentini, 2005, pág. 17.

en un territorio con jurisdicción separada o una sentencia dictada por un tribunal extranjero.[12] Ante los nuevos desarrollos en las comunicaciones y la transportación, es decir, ante el proceso conocido como globalización, se hace cada vez más crítico reconocer el alcance y la importancia de esa rama del Derecho.

En Puerto Rico las normas de derecho internacional privado son pocas y están dispersas, en forma fragmentada, en varias leyes.[13] Igualmente, la jurisprudencia sobre este tema es escasa. Resulta, pues, oportuno examinar y pautar el derecho aplicable a la controversia aquí planteada.

Cuando ante un tribunal se presenta una controversia con elementos de extranjería se debe, en primer lugar, examinar si se tiene jurisdicción y competencia, tanto sobre la materia, como sobre las personas. En los países con tradición de *common law* este dilema se ha atendido adoptando los llamados *long arm statutes,* o estatutos que permiten extender

---

[12] A. Nussbaum, supra, pág. 7-8. Véanse además: A. Padilla, Private International Law of the Philippines, Manila, Padilla Publishers, 1976, pág. 457; E. Pérez, Derecho Internacional Privado: Parte General, Madrid, Editorial Tecnos, 1980, pág. 290-309.

[13] Varios artículos del Código Civil de Puerto Rico regulan las leyes que deben aplicar en determinadas circunstancias. Véanse los artículos 9, 10, 11, 97 y 1277 del Código Civil de Puerto Rico. 31 L.P.R.A. secs. 9-11, 331 y 3561. También en algunas leyes especiales se dispone sobre la ley aplicable. Véase, por ejemplo, la Ley de Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964, 10 L.P.R.A. sec. 278 y ss.; la Ley que reglamenta los contratos de trabajo entre obreros agrícolas emigrantes puertorriqueños y empresas extranjeras, Ley Núm. 87 de 22 de junio de 1962, 29 L.P.R.A. secs. 529 y 530; y los artículos 45 a 47 de la Ley Hipotecaria de 1979, 30 L.P.R.A. sec. 2208 a 2210.

la jurisdicción personal sobre quienes hacen gestiones de negocios desde otro Estado. De esa forma, es más fácil adquirir jurisdicción sobre una controversia aun cuando no hayan contactos sustanciales con el foro judicial donde se presenta.[14] Más aun, cuando los tribunales estatales tienen jurisdicción general sobre la materia.

El análisis, sin embargo, no concluye con la determinación de jurisdicción y competencia.[15] En algunos

---

[14] J.C. Ferguson y D.A. Pearl, International Litigation in the Hemisphere, 13 Am. U. Int'l L. Rev. 953, 955-56 (1998). Los casos más importantes del Tribunal Supremo de Estados Unidos sobre esta materia son: International Shoe Co. v. Washington, 326 U.S. 310 (1945); World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987). En Puerto Rico, donde la normativa procesal proviene de la tradición del *common law,* se incorporó un *long arm statute* en la Regla 4.7 de Procedimiento Civil que regula los emplazamientos a demandados no domiciliados en la Isla. 32 L.P.R.A. Ap. III R. 4.7. En los países de tradición civilista, como norma general, la ley determina específicamente qué foro tiene jurisdicción en cada contexto particular. Véase, por ejemplo, la Convención Interamericana sobre competencia en la esfera internacional para la eficacia extraterritorial de las sentencias extranjeras, de 24 de mayo de 1984, Americanos cuyo texto se puede encontrar en www.oas.org/juridico/spanish/tratados/b-50.html. (Consulta de 30 de abril de 2009). Para una exposición más detallada sobre la competencia de los tribunales en el ámbito internacional véase: J.M. Rosario, Manual de procedimiento jurídico para los extranjeros vivir e invertir en la República Dominicana, Santo Domingo, Amigo del Hogar, 2002, pág. 196-201.

[15] Aunque en sentido estricto no debe considerarse la aplicación de *forum non conveniens* hasta luego de determinarse la jurisdicción y competencia del foro original, en las provincias canadienses que pertenecen a la tradición del *common law,* los tribunales pueden desestimar o paralizar una acción fundamentándose en la doctrina de *forum non conveniens* antes o al mismo tiempo que determinan si tienen jurisdicción sobre el caso. M. Karayanni, Forum non conveniens in the modern age, New York, Transnational Publishers, Inc., 2004, págs. 21-22. R.A. Brand y S.R. Jablonski, Forum Non Conveniens: History, Global Practice, and Future Under the Hague Convention on Choice of Court

estados, principalmente los pertenecientes a la tradición del *common law*, se entra a considerar si el foro local es el más adecuado o conveniente para atender la controversia, aunque tenga jurisdicción y sea competente. Ello, con el propósito de evitar que un tribunal tenga que atender controversias con las cuales tiene poca relación o interés. Los criterios para esta determinación los provee la doctrina de *forum non conveniens.* Si el tribunal determina que no es el foro más apropiado, desestimará la demanda para que sea presentada en el tribunal más adecuado o paralizará los procedimientos hasta que la controversia sea resuelta en el otro tribunal.[16] No obstante, cuando el tribunal determine que tiene jurisdicción y que debe ejercerla será necesario también caracterizar o calificar el caso y decidir cuál es la ley aplicable, según el derecho internacional privado local.[17]

---

Agreements, New York, Oxford University Press, 2007, pág. 80. Véase además Amchem Products Inc. v. British Columbia Workers' Compensation Board, [1993] 1 S.C.R. 897; 472900 B.C. Ltd. v. Thrifty Canada Ltd., (1998) 168 D.L.R. (4th) 602.

[16] Para determinar si al declarar con lugar la moción de *forum non conveniens* procede la desestimación o la paralización de los procedimientos, se debe aplicar la normativa estatutaria y jurisprudencial de la jurisdicción donde se presentó la petición. No obstante, en Inglaterra, Australia y Canadá los tribunales paralizan los procedimientos, como norma general, hasta que se les demuestre que el foro alternativo entendió en la controversia, luego de lo cual dictan la desestimación. Contrario a ello, en Estados Unidos, una vez se declara con lugar una moción de *forum non conveniens* la mayoría de los casos se desestiman. M. Davies, Time to Change the Federal Forum Non Conveniens Analysis, 77 Tul. L. Rev. 309, 266 (2002).

[17] Calificar o caracterizar, en el contexto del Derecho Internacional Privado, es "introducir los hechos en un concepto jurídico", es decir, determinar conforme a qué tipo

Sin embargo, como afirma Carrillo Salcedo, cuando una regla de conflicto ordena la aplicación de una ley extranjera "manifiestamente incompatible con el orden social y jurídico del foro", el tribunal no resolverá conforme a la ley foránea sino que recurrirá a la propia, porque concurren los requisitos para la excepción de orden público internacional.[18]

Aunque no se reconoce el origen exacto de la doctrina de derecho internacional privado del *forum non conveniens*, la mayoría de los especialistas la sitúan en la figura del *forum non competens* utilizada en Escocia en el siglo 18,[19] que le permitía a los tribunales rehusar ejercer su jurisdicción cuando entendían que los intereses de las partes y la justicia se servían mejor si otro foro resolvía la

---

de normas se va a resolver el caso. F. Rigaux, <u>Derecho Internacional Privado: Parte General</u>, Madrid, Editorial Civitas, 1985, pág. 94. Por ejemplo, es decidir si la controversia es de responsabilidad extracontractual o contractual, si es procesal o sustantiva, entre otros. La norma general es que dicha clasificación se realiza utilizando la normativa del Estado donde se dilucidan las controversias. *Íd.*

[18] M. Albaladejo, <u>Comentarios al Código Civil y Compilaciones Forales</u>, Jaén, Ed. Revista de Derecho Privado, 1978, T. I, págs. 437-38. Recalcamos que en éste caso no se plantea asunto alguno referente a conflicto o incompatibilidad de leyes o sistemas jurídicos.

[19] El sistema legal de Escocia es uno mixto, con orígenes en el derecho romano no codificado pero influenciado por la cultura del *common law* inglés. El derecho privado escocés, es decir, el derecho de familia, sucesiones, contratos, entre otros es principalmente civilista mientras que en el derecho comercial, laboral y administrativo prevalece la tradición del *common law*. W. Tetley, <u>Mixed Jurisdiction: Common Law v. Civil Law (Codified and Uncodified)</u>, 60 La. L. Rev. 677, 688-692 (2000); R.B. Schlesinger. <u>Comparative Law</u>, Estados Unidos, The Foundation Press, 1980, pág. 283, 311.

controversia.[20]   La   doctrina   fue   denominada   *forum   non conveniens* a finales del siglo 19.[21]

En  Longworth  v.  Hope,[22]  el  Tribunal  de  Sesiones  de Escocia resolvió que para paralizar o desestimar una demanda por  razón  de  *forum  non  conveniens,*  los  tribunales  debían concluir  primeramente  que  había  algún  otro  foro  con jurisdicción  y  competencia  más  adecuado  para  atender  la controversia  planteada  y  sólo  después  proceder  a  evaluar  los intereses  de  las  partes  y  los  fines  de  la  justicia.[23] Además, los  tribunales  escoceses  de  finales  del  siglo  19  concluyeron que  para  que  procediera  una  moción  de  *forum  non  conveniens,* el  peticionario  tenía  que  probar  que  mantener  el  caso  en  el tribunal  con  jurisdicción  inicial  daba  al  demandante  una ventaja   injusta.[24]   Posteriormente,   se   resolvió   que   el demandado que levanta la defensa tiene el peso de probar que procede desestimar o paralizar, aunque no tiene que demostrar

---

[20]  C.C.  Sherz,  The  Texas  Legislature's  Answer  to  Alfaro: Forum  Non  Conveniens  in  Personal  Injury  and  Wrongful  Death Litigation, 46 Baylor L. Rev. 99, 99 (1994).

[21] E.L.  Barrett  Jr.,  supra,  pág.  389.  Véase  además  Williamson v. North Eastern Ry. Co., (1884) 21 Scot. LR 421.

[22] Longworth v. Hope, (1865) 3M. 1049.

[23] Reiterado  treinta  años  después  en  Sim  v.  Robinow,  (1892) 19 R. 665. R.A. Brand y S.R. Jablonski, Forum Non Conveniens: History,   Global   Practice,   and   Future   Under   the   Hague Convention  on  Choice  of  Court  Agreements,  New  York,  Oxford University Press, 2007, pág. 9.

[24] *Íd.*

que celebrar el juicio en Escocia le resultaría opresivo, vejatorio o abusivo.[25]

Durante el siglo XX, la doctrina de *forum non conveniens* ganó aceptación en los sistemas judiciales que pertenecen a la tradición del *common law*, es decir, Inglaterra, Canadá, Australia, Nueva Zelandia y Estados Unidos.[26] Sin embargo, las manifestaciones de esta doctrina varían de forma sutil pero crítica en cada una de estas jurisdicciones. En la práctica las diferencias metodológicas pueden determinar si un caso va a ser desestimado a favor de un foro extranjero.

En Inglaterra, luego de muchos años de resistencia, los tribunales reconocieron la doctrina escocesa en <u>Logan v. Bank of Scotland</u>, [1906] 1 K.B. 141 (CA), y la reiteraron en <u>St. Pierre v. South American Stores (Goth & Chavez), Ltd.</u>, [1936] 1 K.B. 382 (CA).[27] Sin embargo, al admitir la doctrina de *forum non conveniens,* los tribunales ingleses adoptaron el análisis tradicional, que le exige al demandado probar que el proceso ante el tribunal inicial es abusivo, vejatorio u opresivo.[28] Este enfoque cambió en 1987, cuando la Cámara de los Lores articuló el análisis de la doctrina de *forum non*

---

[25] La Société du Gaz de Paris v. La Société Anonyma de Navigation <u>"Les Armateurs Francais"</u>, (1926) Sess. Cas. 13 (HL); R.A. Brand y S.R. Jablonski, <u>supra</u>, pág. 9-10.

[26] Véase: R.A. Brand y S.R. Jablonski, <u>supra</u>, pág. 1. También en Israel, Singapore, Hong Kong y Gibraltar los tribunales han incorporado la doctrina de *forum non conveniens*. J.J. Fawcett, <u>supra</u>, pág. 12.

[27] *Íd.,* <u>supra</u>, pág. 11-13.

[28] R.A. Brand y S.R. Jablonski, <u>supra</u>, pág. 11-13.

*conveniens* que está aún vigente, en <u>Spiliada Maritime Corp.</u>
<u>v. Cansulex Ltd.</u>, [1987] A.C. 460 (HL).[29]

Según el análisis de <u>Spiliada</u>, denominado "foro
claramente más apropiado", cuando se trata de un demandado
que se encuentra dentro de la jurisdicción, y por tanto tiene
derecho a ser emplazado personalmente, éste debe probar *prima*
*facie* que existe un foro alternativo que es claramente más
apropiado que el doméstico y más conveniente a los intereses
de las partes y a los fines de la justicia.[30] Si el demandado
logra demostrar esto, el peso de la prueba pasa al
demandante, quien tiene que probar las circunstancias
especiales que a su entender justifican retener la acción en
el foro inicial.[31] En aquellos casos en los que el demandado

---

[29] Véase: <u>The Atlantic Star</u>, [1974] A.C. 436 (HL); <u>McShannon</u>
<u>v. Rockware Glass Ltd.</u>, [1978] A.C. 795 (HL); <u>Amin Rasheed</u>
<u>Shipping Corp. v. Kuwuait Ins. Co.</u>, [1984] A.C. 50 (HL); <u>The</u>
<u>Abidin Daver</u>, [1984] A.C. 398 (HL). En este último, el
tribunal incorporó principios de *comity* a su análisis sobre
la doctrina de *forum non conveniens*. R.A. Brand y S.R.
Jablonski, <u>supra</u>, pág. 14-20, 21-24.

[30] Entre los factores que se toman en consideración en
Inglaterra para determinar cuál es el foro más conveniente y
apropiado están: la naturaleza de la acción, los asuntos
legales y prácticos implicados, el conocimiento local sobre
éstos, la ley aplicable, la disponibilidad de los testigos y
de la evidencia a ser presentada en juicio, los costos para
traer a estos testigos u otra evidencia al foro, las
inconveniencias y gastos en que tendría que incurrir un
demandado extranjero para litigar en Inglaterra. Podemos
observar que en esta jurisdicción no se toman en
consideración factores públicos como la congestión de casos
en los tribunales. R.A. Brand y S.R. Jablonski, <u>supra</u>, pág.
11-13. Sin embargo, en Inglaterra cuando el litigio involucre
una materia de interés público, los tribunales no pueden
paralizar o desestimar fundamentándose en *forum non*
*conveniens*. J.J. Fawcett, <u>supra</u>, pág. 15.

[31] En Inglaterra, el demandante también tiene que establecer
que la justicia sustancial se frustraría si la demanda

está fuera de la jurisdicción (*service ex juris),* el peso de la prueba para demostrar que el foro inglés es claramente el más apropiado recae sobre el demandante desde que presenta la acción.[32]

Al igual que en Inglaterra, la doctrina de *forum non conveniens* ha estado presente desde principios del siglo XX en las provincias y territorios canadienses que pertenecen a la tradición del *common law* y en el sistema federal de Canadá. Aunque los tribunales no siempre fueron consistentes, cuando los demandados se encontraban dentro de la jurisdicción se utilizaba, como regla general, el estándar tradicional del "proceso abusivo, opresivo y vejatorio".[33] No obstante, cuando la notificación judicial era *ex juris,* es decir, cuando los demandados estaban fuera de la jurisdicción, y en los casos de *lis alibi pendens* o

---

inicial se paraliza o desestima a favor de otro foro. Por eso se resolvió que la justicia sustancial se frustraría si se paraliza una demanda a favor de que se resuelva una causa en los tribunales de Namibia porque en este país no hay asistencia financiera disponible para las partes indigentes. R.A. Brand y S.R. Jablonski, supra, pág. 23, FN 95; de Dampierre v. de Dampierre, [1987] 2 All E.R. 1; Connelly v. RTZ Corp., [1997] 4 All E.R. 335.

[32] J. Talpis y S.L. Kath, The exceptional as commonplace in Québec forum non conveniens law: Cambior, a case in point, 34 Revue Juridique Themis, 761, 777 (2000).

[33] R. Brand, supra, pág. 76. Véase además: E.L. Hayes, Forum Non Conveniens in England, Australia and Japan. The Allocation of Jurisdiction in Transnational Litigation, 26 U.B.C. L. Rev. 41, 42 (1992).

litispendencia se utilizaba el estándar del foro claramente

más apropiado.[34]

   Entre 1976 y 1993, el Tribunal Supremo de Canadá adoptó,

con algunas variaciones, la doctrina de *forum non conveniens*

anunciada por la Cámara de los Lores inglesa en Spiliada

Maritime Corp. v. Cansulez Ltd., supra.[35] Una de las

particularidades de la doctrina canadiense es que el análisis

para identificar el foro más apropiado se lleva a cabo en un

sólo paso, en el cual se ponderan todos los intereses de las

partes, incluyendo la pérdida de ventaja jurídica y la

adecuacidad del foro.[36]   Por último, el Tribunal Supremo

---

[34] R. Brand, supra, pág. 76. Véase, además: Van Vogt v. All Canadian Group Distributors Ltd., [1969] 9 D.L.R. (3d) 407. La doctrina de *lis alibi pendens* o litispendencia*,* que también existe en los países de tradición romano germánica y fue adoptada por la Convención de la Haya de 2005 sobre selección de foro, se refiere a la situación creada cuando las mismas partes presentan en un tribunal una reclamación que está pendiente en otro tribunal ante el cual habían recurrido previamente. Véase la discusión al respecto en R.A. Brand y S.R. Jablonski, supra. y en M. Gebauer en E. Goottschalk y otros, Conflicts of Laws in a Globalized World, New York, Cambridge University Press, 2007, págs. 89-100.

[35] Véanse: Antares Shipping Corp. v. Capricorn, [1976] 65 D.L.R. 3d 105; Amchem Products Inc. v. British Columbia Workers Compensation Board, [1993] 1 S.C.R. 897. Sin embargo, algunas provincias han adoptado la norma inglesa para casos *ex juris* en los cuales se tiene que pedir autorización para emplazar, a efectos de que en esas circunstancias el demandante es quién tiene el peso de probar que el tribunal doméstico es el más apropiado.   Entre estas se encuentran Alberta, Ontario y British Columbia. Véase: United Oilseed Products Ltd. v. Royal Bank of Canada, (1998) 5 W.W.R. 181 (Alta. C.A.); Frymer v. Brettschneider, (1994) 19 O.R. (3d) (60) (C.A.).

[36] Amchem Products Inc. v. British Columbia Workers Compensation Board, supra. No obstante las modificaciones canadienses a la doctrina adoptada por los Lores ingleses en *Spiliada,* el peso de probar que existe otro foro más adecuado

canadiense ha resuelto que un tribunal puede evaluar la procedencia de una moción de *forum non conveniens* antes de determinar si tiene jurisdicción.[37]

En Australia, el Tribunal Supremo incorporó por primera vez los principios de la doctrina de *forum non conveniens* en Maritime Ins. Co. Ltd. v. Geelong Harbor Trust, 6 C.L.R. 194 (1908).[38] Para ello utilizó el análisis tradicional de "proceso abusivo, opresivo y vejatorio" que prevalecía en Inglaterra para esa época. Cuando ya los tribunales ingleses habían modificado su enfoque al del "foro claramente más apropiado", el Tribunal Supremo de Australia resolvió Oceanic Sun Line Special Shipping Co. Inc. v. Fay, (1988) 165 C.L.R. 197, y su secuela Voth v. Manildra Flour Mills Pty. Ltd., (1990) 171 C.L.R. 538. En estos casos el tribunal australiano declinó adoptar el nuevo enfoque inglés y desarrolló uno propio, conocido como el del "foro claramente inapropiado". Bajo este análisis, a diferencia del examen de "foro más apropiado", el que un balance de factores e intereses favorezca a otro foro no justifica, de por sí, la paralización o desestimación de la acción.[39] Por otro lado,

---

y conveniente que el doméstico sigue recayendo sobre el peticionario, que usualmente es el demandado.

[37] En los casos posteriores a Amchem Products Inc. v. British Columbia Workers Compensation Board, [1993] 1 S.C.R. 897, los tribunales canadienses han confirmado el enfoque y clarificado el análisis. Véase: 472900 B.C. Ltd. v. Thrifty Canada Ltd., 168 D.L.R. 4th 602 (1998).

[38] R.A. Brand y S.R. Jablonski, supra, pág. 87.

[39] E.L. Hayes, supra, pág. 51.

contrario al antiguo enfoque de "proceso abusivo, opresivo y vejatorio", el criterio adoptado por Australia permite paralizar o desestimar una demanda o acción aunque se hubiera presentado en un foro con jurisdicción y sin propósito de causar daños a la otra parte, si la conexión con dicho foro es débil y expone al demandado a gastos excesivos y otras inconveniencias e injusticias.[40] En fin, el peticionario de una paralización o desestimación bajo el enfoque de "foro claramente inapropiado" tiene que demostrar que mantener el proceso ante el tribunal inicial es claramente gravoso, injusto, perjudicial y dañino para el demandado, y que existe un foro más apropiado.[41] De este modo, la doctrina australiana trata de minimizar la necesidad de evaluar los sistemas de justicia de otros Estados.[42]

B

En Estados Unidos, encontramos evidencia, principalmente en casos sobre almirantazgo, de que desde principios del siglo 19 algunos tribunales podían rehusarse a ejercer su jurisdicción sobre partes no residentes, cuando las partes y la controversia no tenían relación con el foro.[43] Sin

---

[40] R.A. Brand y S.R. Jablonski, supra, pág. 92.

[41] Íd., págs. 102-103; M. Stuckelberg, Lis Pendens and Forum Non Conveniens at The Hague Conference, 26 Brooklyn J. Int'l L. 949, 957 (2001). Véase además Oceanic Sun Line Special Shipping Co. Inc. v. Fay, supra.

[42] J. Epstein en J.J. Fawcett, supra, pág. 87.

[43] Willendson v. Forsoket, 29 F. Cas. 1283 (1801); Garder v. Thomas, 14 Johns. 134 (1817); Johnson v. Dalton, 1 Cow. 543

embargo, ninguno de estos casos hace referencia a la doctrina de *forum non conveniens.* Posteriormente, varios estados adoptaron cláusulas generales que le daban poder a los jueces para negarse a ejercer su jurisdicción sobre las personas que no residían en el estado.[44]

Así las cosas, en 1929, Plaxton Blair publicó su investigación sobre el principio de *forum non conveniens* y su lugar en el derecho común angloamericano.[45] Su aportación influyó significativamente en la incorporación de la doctrina por los tribunales de Estados Unidos. De hecho, ese mismo año, el Tribunal Supremo federal sostuvo la constitucionalidad de un estatuto de Nueva York que le permitía al tribunal estatal rehusar ejercer su jurisdicción sobre un no residente, cuando las partes y la acción tenían una conexión mayor con otro foro.[46] Otros casos abrieron la puerta para la aceptación de la doctrina, aun cuando sus expresiones en torno a la discreción de los tribunales para negarse a ejercer su jurisdicción no eran parte del *ratio*

---

(1823); The Infanta, 13 F. Cas. 37 (1848); The Maggie Hammond, 76 U.S. 435 (1869); Collard v. Beach, 87 N.Y.S. 884 (1904).

[44] Véase: Foss v. Richards, 139 A. 313 (1927); Jackson & Sons v. Lumbermen's Mutual Casualty Co., 168 A. 895 (1933); Universal Adjustment Corp. v. Midland Bank, 184 N.E. 152 (1933).

[45] P. Blair, The Doctrine of Forum Non Conveniens in Anglo American Law, 29 Colum. L. Rev. 1 (1929).

[46] Douglas v. New York, New Haven & Hartford R.R. Co., 279 U.S. 377 (1929).

*decidendi* de las opiniones del tribunal.[47] Finalmente, en Williams v. Green Bay & Western RR. Co., 326 U.S. 549 (1946), el Tribunal Supremo de Estados Unidos resolvió que los tribunales federales pueden fundamentarse en la doctrina de *forum non conveniens* para desestimar un caso discrecionalmente, aunque su jurisdicción se base en diversidad de ciudadanía, si el demandado presenta evidencia de que mantener la controversia en el foro doméstico resulta opresivo, vejatorio y abusivo.

Al próximo año, el Tribunal Supremo de Estados Unidos se enfrentó nuevamente a esta figura en Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) y adoptó expresa y firmemente la doctrina de *forum non conveniens* para casos civiles en los tribunales federales. En una reclamación por daños sufridos en el estado de Virginia, el demandante, residente de Virginia, reclamó en el tribunal de distrito de Nueva York. El demandado, una Corporación organizada bajo las leyes de Pennsylvania y autorizada a hacer negocios tanto en Virginia como en Nueva York, invocó la doctrina de *forum non conveniens* alegando que el foro más apropiado era Virginia. Al desestimar el caso, sin perjuicio de que se presentara en el tribunal distrital de Virginia, el Tribunal Supremo de Estados Unidos adoptó ciertos criterios para guiar la aplicación de la doctrina de *forum non conveniens*. Resolvió, que antes de considerar la procedencia de una solicitud de esta naturaleza, los tribunales deben establecer su

---

[47] Canadá Malting Co. v. Paterson S.S., 285 U.S. 413 (1932).

jurisdicción y competencia, para luego determinar que existe al menos otro foro con jurisdicción sobre los demandados. Por consiguiente, es un requisito de umbral asegurar que hay un foro alternativo disponible.[48] Además, el Tribunal Supremo de Estados Unidos aclaró que la figura de *forum non conveniens* debe utilizarse con cuidado, limitando la desestimación a casos inusuales en los cuales un demandante realmente no busca justicia, sino que acosa u hostiga al demandado.[49]

El Tribunal Supremo de Estados Unidos también estableció ciertos factores privados y públicos que se deben sopesar al considerar una petición de esta naturaleza. Entre los privados incluyó el lugar donde residen los testigos y la disponibilidad de recursos para obligarlos a comparecer a juicio, el acceso a las fuentes de prueba, la posibilidad de realizar una inspección ocular si ésta resulta necesaria y la

---

[48] Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 506-507 (1947). Un foro está disponible si tiene jurisdicción sobre la materia y sobre todas las personas en el pleito. Véase: Alpine View Co. v. Atlas Copco AB, 205 F. 3d 208, 221 (2000); Calvo Growers of California v. Belgium, 632 F. 2d 963, 968 (1980). Esto se puede lograr si el demandado acepta someterse al foro alternativo. M. Davies, Time to Change the Federal Forum Non Conveniens Analysis, 77 Tul. L. Rev. 309, 317 (2002). Véase además: Pipper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). Los autores señalan, sin embargo, que los tribunales deben asegurarse de que la disponibilidad del foro sea real y no hipotética, dado que hay países, entre ellos algunos Estados latinoamericanos, que han legislado para negarle jurisdicción a un demandante que presenta su reclamo en primer término en otro tribunal y recurre al segundo porque su reclamación fue desestimada por razón de *forum non conveniens*. A.L. Garro, Forum Non Conveniens: "Availability" and "Adequacy" of Latin American Fora, 35 U. Miami Inter-Am. L. Rev. 65, 74 (2004).

[49] Gulf Oil Corp. v. Gilbert, supra, págs. 507, 508-509.

posibilidad de poder ejecutar la sentencia.[50] Entre los intereses públicos que también deben considerarse están el interés del Estado y de la comunidad en que las controversias locales se decidan en su territorio, las dificultades administrativas que surgen por la congestión de casos y el problema que implica aplicar leyes extranjeras.[51] Por último, debe respetarse la decisión del demandante de seleccionar determinado foro y por eso no debe hacerse un cambio a menos que, en la ponderación de intereses, la balanza se incline fuertemente a favor de otro tribunal.[52]

El mismo día en que resolvió Gulf Oil, el Tribunal Supremo de Estados Unidos también decidió Koster v. American Lumbermen Mutual Casualty Co., 330 U.S. 518 (1947). Éste trataba sobre una demanda derivativa que presentó un accionista residente de Nueva York contra una corporación incorporada en Illinois que estaba autorizada a hacer negocios en todos los estados, entre los cuales estaba el estado donde residía el demandante. En este caso, el Tribunal

---

[50] *Íd.,* pág. 508. Tribunales federales de menor jerarquía han entendido que el tribunal sentenciador también debe tomar en consideración el momento procesal en que se presenta la solicitud de desestimación por razón de *forum non conveniens*. Baumgart v. Fairchild Aircraft Corp., 981 F. 2d 824, 835-36 (1993). *In re* Air Crash Disaster New Orleans, Louisiana on July 9, 1982 v. Pan American World Airways, Inc., 821 F. 2d 1147, 1165 (1987).

[51] Gulf Oil Corp. v. Gilbert, supra, págs. 508-509. Otra consideración, que no nos es pertinente en Puerto Rico, es la posibilidad de que a personas de una comunidad que no tiene relación con la controversia se les imponga el deber de ser jurado, como sucede en casos civiles en la jurisdicción federal.

[52] Gulf Oil Corp. v. Gilbert, supra, pág. 508.

Supremo de Estados Unidos indicó que no se debía privar a la parte reclamante de las ventajas de la jurisdicción del estado donde reside, salvo que el demandado demuestre claramente que: (1) la selección del foro les resulta opresiva y vejatoria en un grado proporcionalmente mayor a las ventajas que representa dicho foro para el demandante o, más bien, que las ventajas que obtiene el demandante de litigar en el foro doméstico son pocas o inexistentes en comparación con las inconveniencias causadas al demandado; o (2) el foro seleccionado es inapropiado debido a problemas administrativos y legales.[53] De esa forma, generalmente pesa más la conveniencia que representa para el demandante que el caso sea atendido por el tribunal del estado donde reside que los posibles inconvenientes causados al demandado.[54]

Como podemos observar, estos dos casos en los cuales el Tribunal Supremo de Estados Unidos sentó las bases de la doctrina de *forum non conveniens,* establecieron normas para el traslado de casos entre tribunales de distrito federales. Incluso, en Gulf Oil Corp. v. Gilbert, supra, pág. 507, el Tribunal Supremo de Estados Unidos reconoció que algunos estados habían adoptado normas de traslado basadas en la conveniencia de los testigos y los fines de la justicia, mientras que los tribunales federales de distrito no tenían el beneficio de un enunciado similar para guiar la

---

[53] Koster v. American Lumbermen Mutual Casualty Co., 330 U.S. 518, 524 (1947).

[54] *Íd.*

posibilidad de traslados entre distritos. Un año después de que el Tribunal Supremo de Estados Unidos resolviera Gulf Oil y Koster, el Congreso legisló para solucionar las controversias sobre foro apropiado en el ámbito federal. La sección 1404(a) del Título 28 autoriza a los tribunales federales a transferir los casos de un distrito a otro luego de un análisis similar al de Gulf Oil.[55]

Transcurrieron más de treinta años antes de que el Tribunal Supremo de Estados Unidos extendiera la norma de *forum non conveniens* a casos internacionales presentados en los tribunales federales por diversidad de ciudadanía. Pipper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). Al hacerlo, adoptó un criterio diametralmente contrario al de los casos domésticos, al resolver que para determinar la conveniencia del traslado a un tribunal fuera de la jurisdicción estadounidense se debe dar poco peso a la posibilidad de que el demandante se afecte de manera desfavorable por razón del derecho aplicable en el foro alternativo.[56] Esto será así siempre que el remedio que ofrezca el foro alternativo no sea tan claramente inadecuado o insatisfactorio que en realidad no se brinde remedio alguno al demandante.[57] Si no existe un remedio adecuado, entonces debe dársele peso sustancial al cambio desfavorable en el derecho y el tribunal de distrito debe concluir que el traslado del caso atenta contra el

---

[55] 28 U.S.C. sec. 1404(a).

[56] Pipper Aircraft Co. v. Reyno, 454 U.S. 235, 247, 254 (1981).

[57] *Íd.*

interés de la justicia.[58] Además, la presunción de que el foro seleccionado por el demandante es el adecuado aplica con menos fuerza cuando el reclamante o la parte realmente interesada es extranjera.[59] Por último, el Tribunal Supremo de Estados Unidos resolvió que la decisión de declarar con lugar o denegar una moción de *forum non conveniens* queda a la discreción del tribunal y solamente puede revocarse cuando hay un claro abuso de esa discreción.[60] Cuando el tribunal de instancia considera de manera razonable todos los factores públicos y privados aplicables, su decisión se revisará en un marco de deferencia sustancial.[61]

---

[58] Un tribunal extranjero es adecuado cuando no se priva a las partes de remedios o se les trata injustamente, aunque no disfruten de los mismos beneficios que recibirían en el foro inicial. Syndicate 420 At Lloyd's London v. Early American Insurance Co., 796 F. 2d 821, 829 (1986). Un cambio desfavorable en la ley sólo convierte a un foro en claramente inadecuado cuando no se provea remedio alguno. Martínez v. Dow Chemical Co., 219 F. Supp. 2d 719 (E.D. La. 2002). Una crítica a esta interpretación es que raramente impide el traslado de casos presentados por extranjeros de escasos recursos en los cuales se demanda a empresas multinacionales por daños causados en países en vías de desarrollo. Véase: W.W. Heiser, Forum Non Conveniens and Choice of Law: The Impact of Applying Foreign Law in Transnational Tort Actions, 51 Wayne L. Rev. 1161, 1172 (2005).

[59] Pipper Aircraft Co. v. Reyno, supra, pág. 255.

[60] *Íd.*

[61] *Íd.* Casos posteriores han especificado algunos asuntos como que el análisis decisional debe quedar plasmado en la propia resolución o en la minuta. *In re* Air Crash Disaster New Orleans, Louisiana on July 9, 1982 v. Pan American World Airways, Inc., 821 F. 2d 1147, 1166 (1987). Esto, para que los tribunales apelativos estén en posición de determinar aplicar el estándar de revisión en estos casos, si el foro sentenciador incurrió en un claro abuso de su discreción. Debemos indicar que aunque no existe una codificación

C

La doctrina de *forum non conveniens* adoptada en los Estados del *common law* no tiene un equivalente directo en la tradición romano germánica. Tradicionalmente, en los sistemas civilistas, una vez se determina que el tribunal tiene jurisdicción para entender en la controversia, los jueces no tienen discreción para negarse a resolver una causa, salvo que se trate de una situación de litispendencia.[62] El profesor Von Mehren afirma que "con pocas excepciones, las jurisdicciones civilistas han mantenido su tradicional hostilidad a los tribunales que ejercen su discreción con respecto al ejercicio de la autoridad adjudicativa".[63] Sin

---

uniforme del *forum non conveniens* para todos los estados de Estados Unidos, en 1962 el *National Conference of Comisioners of Uniforms Laws* sometió una recomendación a esos efectos, en la sección 1.05 del *Uniform Interstate and International Procedure Act,* 13 U.L.A. 355 (1986).

[62] R.A. Brand y S. R. Jablonski, supra, pág. 121; J. Zekoll, Could a Treaty Trump Supreme Court Jurisdiction Doctrine? The Role and Status of American Law in the Hague Judgments Convention Project, 61 Alb. L. Rev. 1283, 1297 (1998). La doctrina de litispendencia tiene el propósito de evitar procedimientos paralelos en tribunales sitos en jurisdicciones diferentes. Por consiguiente, aunque con frecuencia la potestad de desestimar por litispendencia ha sido erróneamente considerada como el equivalente civilista de la doctrina de *forum non conveniens*, estas dos instituciones implican conceptos diferentes, que parten de diferentes presupuestos y tienen como objetivo alcanzar distintos propósitos. Véase: C.A. Gabuardi, Entre la jurisdicción, la competencia y el forum non conveniens, Boletín Mexicano de Derecho Comparado, año XLI, núm 121, enero-abril 2008, págs. 93-94.

[63] A.T. Von Mehren, Theory and Practice of Adjudicatory Authority, 295 Recueil Des Cours 413 (2002). [Traducción Nuestra].

embargo, algunos sistemas civilistas se han ido moviendo hacia reconocerle a los tribunales algún poder discrecional para denegar su jurisdicción o rehusar ejercerla.[64] Estas jurisdicciones se han percatado de que no obstante los esfuerzos por legislar normas jurisdiccionales que consideren la relación entre las controversias y el estado del foro, es imposible prever todas las posibilidades. Ello hace necesario un instrumento flexible de equilibrio similar al *forum non conveniens.*

Alemania, Grecia, Suiza y Japón se encuentran entre los países civilistas que han adoptado reglas de circunstancias especiales. Los mecanismos que utilizan algunos sistemas civilistas para justificar el no ejercer su jurisdicción o para denegarla, son similares a la doctrina de *forum non conveniens.*[65] No obstante, estos instrumentos operan

---

[64] M. Karayanni, supra, pág. 11-12. Para una discusión detallada sobre la posibilidad de incorporar la doctrina de *forum non conveniens* al derecho español y al de la Comunidad Europea véase: C. Otero García-Castrillón, Problemas de Aplicación de las normas de competencia judicial internacional en el derecho español y comunitario: Reflexiones en torno al *forum non conveniens*, Revista de la Facultad de Derecho de la Universidad Complutense, núm 94, 2000, págs. 99-128; C. Otero García-Castrillón, En torno a los problemas de aplicación de las normas de competencia judicial; reflexiones sobre la admisibilidad del *forum non conveniens* en el derecho español, Anuario español de derecho internacional privado; t. 1, 2001, págs.. 425-434. Disponibles en el archivo institucional E-Prints Complutense: http://eprints.ucm.es.

[65] En Alemania, por ejemplo, un tribunal de tutela puede abstenerse de proteger al pupilo cuando los intereses de éste pueden ser mejor servidos en una jurisdicción extranjera. Dr. Haimo Schack en J.J. Fawcett, supra, pág. 191; M. Karayanni, supra, pág. 63. Los tribunales también pueden actuar con flexibilidad en los procedimientos no contenciosos en interés de menores y pueden declararse sin jurisdicción cuando la ley

aplicable extranjera le requiere llevar a cabo algo que es imposible o inaceptable en su país. Dr. Haimo Schack en J.J. Fawcett, _supra_, pág. 191.

En Grecia, una acción puede ser desestimada si es "abusiva", esto es, cuando no se demuestra ninguna relación con el foro invocado y el demandante busca alcanzar objetivos impropios o propósitos no permitidos por las normas jurisdiccionales. P. Kargados en J.J. Fawcett, _supra_, pág. 242-244. Se trata de un poder discrecional para denegar la jurisdicción internacional, que surge de la prohibición del "ejercicio abusivo de derechos" contenida en la Constitución griega y de la obligación que tienen las partes de actuar de buena fe, según el Código Civil y el Código de Procedimiento Civil. P. Kargados en J.J. Fawcett, _supra_, pág. 242-244. La jurisdicción internacional es la autoridad que tiene un tribunal para atender y resolver controversias entre distintos países o personas de países diferentes. Black's Law Dictionary, _supra_, pág. 869.

Japón permite que un tribunal pueda desestimar un caso por falta de jurisdicción, basado en los principios que garantizan la igualdad de condiciones entre las partes y la pronta y apropiada administración de la justicia. C.A. Gabuardi, _Entre la jurisdicción, la competencia y el forum non conveniens_, Boletín Mexicano de Derecho Comparado, año XLI, núm 121, enero-abril 2008, pág. 91, FN 51; R.A. Brand y S.R. Jablonski, _supra_, pág. 124-25; _Mukoda v. Boeing Co.,_ 31 Japanese Ann. Int'l L. 216, 217 (1988). Entre las circunstancias especiales tomadas en consideración por los tribunales japoneses están: (1) las expectativas del demandado, (2) la naturaleza de la demanda o del demandado (3) la conveniencia de las partes y (4) la carga puesta sobre el demandante al desestimar la demanda para que la presente en el foro extranjero. A. Hironaka, _Jurisdictional Theory "Made in Japan": Convergence of U.S. and Continental European Approaches_, 37 Vand. J. Transnat'l L.1317, 1338 (2004). Como podemos observar, los tribunales japoneses no toman en consideración intereses públicos al decidir si desestiman por circunstancias especiales. J.J. Fawcett, _supra_, pág. 15.

En Suiza se permite a los tribunales rehusar ejercer su jurisdicción sobre un menor cuando las autoridades extranjeras del lugar de residencia del menor están mejor informadas y, por tanto, son un foro más conveniente. J.J. Fawcett, _supra_, pág. 26. Finalmente, en Argentina encontramos varios mecanismos procesales que permiten que los tribunales desestimen o rehúsen ejercer jurisdicción sobre algún caso cuando haya duda sobre la imparcialidad de los jueces locales o porque se entiende que no se va a lograr hacer justicia. M. Williams en J.J. Fawcett, _supra_, pág. 72.

generalmente en circunstancias limitadas como, por ejemplo, en el derecho de familia. Además, la base sobre la cual se deniega o se rehúsa ejercer jurisdicción en estos Estados que pertenecen a la tradición civilista es normalmente que el tribunal local resulta ser inapropiado.[66]

Por su similitud a nuestro sistema de derecho, resulta apropiado examinar más detenidamente lo sucedido en las jurisdicciones de tradición mixta de Québec, en Canadá y el estado de Louisiana. Al hacerlo, encontramos que éstas no han sido tan renuentes a incorporar instituciones similares al *forum non conveniens*, si bien para lograrlo optaron por la vía legislativa.

En Québec, el tribunal de apelaciones rechazó la doctrina de *forum non conveniens* en Alberman v. Solomon, [1986] R.D.J. 385 (CA). Pocos años después, en 1994, se introdujo una versión legislativa de la doctrina, mediante enmienda al Libro de Derecho Internacional Privado del Código Civil. Conforme a esto, el artículo 3135 del Código Civil de Quebec dispone:

> Even though a Québec authority has jurisdiction to hear a dispute, it may exceptionally and on application by a party, decline jurisdiction if it considers that the authorities of another country are in a better position to decide.

En esta provincia canadiense, a diferencia de las de tradición anglosajona, se exige que los tribunales decidan primero si tienen jurisdicción, antes de considerar la

---

[66] J.J. Fawcett, supra, pág. 27.

posibilidad de declinar su ejercicio por las razones expuestas en la norma citada. A pesar de que la jurisprudencia quebequense no ha analizado con profundidad el significado del concepto de "exceptionally" incluido en esta disposición, especialistas en la materia han afirmado que la autoridad de los jueces para remitir una demanda a un país extranjero responde a un criterio intermedio, entre el estricto de la tradición civilista y el discrecional del *common law*.[67]

El desarrollo de la doctrina de *forum non conveniens* en el estado de Louisiana, que toma su derecho procesal del *common law* y su derecho privado de la tradición romano germánica, también desembocó en intervención legislativa. Durante el transcurso del siglo XX, el Tribunal Supremo de Louisiana miró esta doctrina con ambivalencia. En algunas opiniones indicó que no la aplicaría porque no era apropiada en una jurisdicción de origen civilista.[68] En otros casos reconoció la doctrina, pero la aplicó para retener el caso

---

[67] J. Talpis y S.L. Kath, supra, págs. 796-97. Entre los factores tomados en consideración por los tribunales quebequenses para paralizar un litigio están la residencia, domicilio e intereses de las partes y de los testigos, la ubicación de la prueba, la posibilidad de ejecución de una sentencia, si hay abuso de procedimiento, la disponibilidad de un foro extranjero y la familiaridad del foro con el derecho sustantivo envuelto. G. Goldstein en J.J. Fawcett, supra, pág. 154-155.

[68] Kassapass v. Arkon Shipping Agency, 485 So. 2d 565 (La. App. 5th Cir 1986); Trahan v. Phoenix Insurance Co., 200 So. 2d 118 (La. App. 1st Cir. 1967).

en la esfera local.[69] Finalmente, con el propósito de revocar a Trahan v. Phoenix Insurance Co., 200 So. 2d 118 (La. App. 1st Cir. 1967), y por recomendación del *Louisiana Law Institute,* la legislatura del estado enmendó el artículo 123 del Código de Procedimiento Civil para permitir que sus tribunales desestimen sin perjuicio una causa de acción presentada por un no residente, cuando los hechos ocurren fuera de la jurisdicción y se prueba que hay otro foro más apropiado.[70]

D

El debate internacional sobre la doctrina de *forum non conveniens* entre los países de la tradición romano germánica y los de *common law* ha sido tan intenso que durante las discusiones iniciadas en 1994 para lograr un acuerdo internacional sobre competencia judicial con el auspicio de la Conferencia de la Haya de Derecho Internacional Privado,[71] una de las controversias que se suscitó fue precisamente en torno a esta doctrina. Este encuentro internacional de especialistas en la materia logró un Proyecto de Convención de la Haya sobre competencia judicial y ejecución de sentencias extranjeras en materia comercial y civil en el

---

[69] Véase: Smith v. Globe Indem, 243 So. 2d 882 (La. App. 1st Cir. 1971); Union City Transfer Fiels, 199 So. 2d. 206 (La. App. 1st Cir. 1940).

[70] La. Code. Civ. P. art. 123.

[71] La Conferencia de la Haya de Derecho Internacional Privado es una organización internacional con sede en la ciudad de La Haya. Tiene el propósito de homologar las normas de derecho internacional privado en el plano internacional.

año 1999. La disposición para rehusar ejercer jurisdicción se mantuvo sin cambios significativos en un segundo borrador del Convenio en el año 2001. Sin embargo, el proceso no logró la exhaustiva convención internacional sobre jurisdicción y ejecución de sentencias a la que aspiraba, sino que generó una Convención sobre selección de foro firmada el 30 de junio de 2005.

No obstante, el borrador para un convenio sobre competencia judicial es ilustrativo de un modelo pensado y estudiado con profundidad por especialistas provenientes de distintas tradiciones jurídicas.[72] Como estándar para desestimar un caso, en circunstancias excepcionales, el proyecto le requiere al demandado probar que el tribunal inicial es claramente inapropiado y que hay otro tribunal con jurisdicción que es claramente más apropiado para resolver la disputa. Para asegurar que la controversia sea considerada efectivamente por un tribunal competente el borrador provee que los procedimientos ante el tribunal inicial serán paralizados, de manera que se puedan retomar los procedimientos si el foro alternativo decide no ejercer su jurisdicción.[73]

---

[72] Artículo 22 del Proyecto preliminar de Convención de la Haya de derecho internacional privado de 2001.

[73] Si se demuestra que el tribunal inicial es claramente inapropiado y que hay otro foro que tiene jurisdicción y es claramente más apropiado, el primero debe paralizar los procedimientos. Corresponde al demandante presentar la reclamación en el foro alternativo en el tiempo concedido por dicho tribunal. Si no lo presenta, el caso se desestimará en el foro inicial. Lo mismo sucederá si cumple el demandante y el foro alternativo asume jurisdicción.

El postulado armonizador propuesto por la Conferencia de la Haya enumera ilustrativamente unos factores privados que se deben tomar en cuenta para determinar si el foro inicial es claramente inapropiado y si el foro alternativo es claramente apropiado.[74] El proyecto no incluye los denominados factores públicos adoptados por los tribunales estadounidenses y prohíbe el discrimen por nacionalidad o residencia de las partes. Con ello, aspira a mayor certeza en la determinación del tribunal apropiado que la que brindan los análisis liberales utilizados en el Reino Unido, Estados Unidos y Canadá.

Otro esfuerzo de uniformar la aplicación de la figura de *forum non conveniens* la encontramos en los trabajos del Consejo del Instituto Internacional para la Unificación del Derecho Privado (UNIDROIT). En el 2004 UNIDROIT adoptó unos principios de procedimiento civil transnacional preparados por el *American Law Institute* y por un grupo seleccionado de UNIDROIT. En lo que nos concierne, UNIDROIT adopta un

---

Además, los incisos 7 y 8 del artículo 22, supra, que exponen circunstancias en las cuales no se puede desestimar discrecionalmente, regulan la jurisdicción especial en el caso de consumidores y trabajadores, quienes pueden reclamar en su lugar de residencia habitual.

[74] Los factores privados que el proyecto estima que los tribunales deben tomar en consideración son la inconveniencia del foro con relación a la residencia habitual de las partes, la naturaleza y localización de la prueba, incluyendo los documentos, testigos y procedimientos para obtenerla, si hay términos prescriptivos aplicables y la posibilidad de que se reconozca y ejecute una decisión en los méritos. Artículo 22(2) del Proyecto preliminar de la Convención de la Haya de derecho internacional privado de 2001.

principio similar al proyecto de la Convención de la Haya pues proveería para la suspensión de los procedimientos cuando el foro inicial resulta ser manifiestamente inapropiado, frente a otro foro con jurisdicción que sea más apropiado.[75] En los comentarios oficiales de UNIDROIT, se aclara que este principio debe interpretarse en conexión con el principio 3.2 sobre igualdad procesal de las partes, que prohíbe cualquier discrimen por nacionalidad o residencia.[76]

E

Definitivamente, tanto la cultura civilista como la del *common law* tienen buenas razones para favorecer o no la doctrina de *forum non conveniens*. Los Estados que pertenecen a la tradición del *common law* entienden que esta figura permite que el tribunal que resuelve el caso sea el que tiene la relación más significativa con éste. Además, si la prueba, los testigos y las partes se encuentran en otro país, transferir el caso a un tribunal de ese país no sólo es más apropiado, sino que puede, en ocasiones, disminuir el costo, la complejidad y la duración de los procedimientos. Se reconoce que al adoptar la doctrina se disuaden las prácticas de *forum shopping* y, por el contrario, se promueve

---

[75] Principio 2.5 de los principios de procedimiento civil transnacional preparados por UNIDROIT y por el *American Law Institute,* http://www.unidroit.org/english/principles/civilprocedure/ali-unidroitprinciples-e.pdf, 2004 (Consulta de 9 de junio de 2009).

[76] Comentario *P-2F* al Principio 2.5 de los principios de procedimiento civil transnacional preparados por UNIDROIT y por el *American Law Institute*, supra.

que el demandante presente su caso en el foro más apropiado para la adjudicación de la causa.[77]

De otra parte, los países que pertenecen a la tradición romano germánica entienden que la litigación de una solicitud basada en *forum non conveniens* puede ser costosa y consumirle tiempo a las partes y al tribunal. Es decir, el demandante va a tener que incurrir en los gastos del procedimiento preliminar en el tribunal inicial y luego en el proceso en sus méritos, ya sea en el mismo foro o en otro.[78]

Actualmente se critica el que la doctrina de *forum non conveniens* no se haya examinado desde la situación social de la globalización. Después de todo, el análisis de *forum non conveniens* bosquejado en <u>Gulf Oil</u> y <u>Koster</u> se elaboró hace

_____

[77] El *forum shopping* es la práctica de elegir la jurisdicción o el tribunal que según la apreciación del demandante resolvería una reclamación o controversia de la manera más favorable. Black's Law Dictionary, <u>supra</u>, pág. 681. Precisamente, se ha postulado que la doctrina de *forum non conveniens* es una herramienta útil en contra de esta práctica y particularmente, para sopesar la atracción que ejercen ciertas jurisdicciones como resultado de leyes y procedimientos más favorables. J.W. Joyce, <u>Forum Non Conveniens</u>, 60 La. L. Rev. 293, 294 (1999).

[78] M. Stuckelberg, <u>Lis Pendens and Forum Non Conveniens at The Hague Conference</u>, 26 Brooklyn J. Int'l L. 949, 950 (2001). La incertidumbre respecto al foro apropiado y la diversidad de soluciones posibles en casos similares también es contraria a la importancia central que en estos sistemas tiene la previsibilidad y la certeza jurídica. En Estados Unidos los tribunales han alcanzado conclusiones diametralmente opuestas en casos sobre *forum non conveniens* virtualmente idénticos. D.W. Robertson, <u>The Federal Doctrine of Forum Non Conveniens: "An Object Lesson in Uncontrolled Discretion"</u>, 29 Tex. Int'l. L. J. 353, 362 (1994). Además, la revisión apelativa, limitada como está a examinar si hubo abuso de discreción, no provee mayor uniformidad. *Íd.*

más de sesenta años  en un contexto doméstico. Sin embargo, los tribunales estadounidenses reproducen este enfoque actualmente para atender casos en contextos internacionales y frente a una nueva realidad mundial.[79] Varios expertos en la materia han señalado que los factores o criterios aplicados actualmente resultan anacrónicos, mientras que el análisis provoca resultados imprecisos e inciertos.

Los tratadistas indican que los demandantes extranjeros cuyos casos se desestiman en los tribunales de Estados Unidos por razón de *forum non conveniens* no pueden, usualmente, proseguir en el foro extranjero que hipotéticamente es el más apropiado, entre otras razones, porque no tienen los recursos económicos, no se permiten honorarios contingentes o la inversión de recursos no se compensa con la remuneración que se puede obtener.[80] En múltiples ocasiones, los foros extranjeros que reciben las pocas reclamaciones que se presentan, rechazan la demanda por falta de jurisdicción u otras razones similares.[81] Entonces, la protección que provee la normativa adoptada en Estados Unidos, en cuanto reconoce la naturaleza condicional de la desestimación por *forum non conveniens*, resulta más aparente que real, porque en la práctica son pocos los

---

[79] Véase: M. Davies, supra, pág. 313.

[80] D.W. Robertson, supra, pág. 371.

[81] M. Davies, supra, pág. 319.

demandantes que regresan al tribunal norteamericano cuando el foro extranjero no está disponible.[82]

También deben revisarse, a la luz de los desarrollos del siglo XXI, los factores privados establecidos por la jurisprudencia de Estados Unidos para determinar si un foro es apropiado. No hay duda que hoy en día el procedimiento para obtener prueba que se encuentra en otra jurisdicción es mucho más fácil y eficiente que cuando se decidió Gulf Oil en 1947.[83] Los costos de obtener el testimonio de un testigo que reside en otro Estado también son significativamente menores hoy que a mediados del siglo XX. De ser realmente necesario el desplazamiento, los desarrollos en los medios

---

[82] *Íd.* El Profesor David Robertson encontró que en casos desestimados por *forum non conveniens* en Estados Unidos entre 1947 y 1984, solamente un pequeño por ciento de los demandantes obtuvo compensación. D.W. Robertson, Forum Non Conveniens in America and England: "A Rather Fantastic Fiction", 103 L.Q. Rev. 398, 404-405 (1987).

[83] En ese entonces, el proceso requería que el tribunal inicial enviara una carta rogatoria al tribunal del Estado donde se encontraban los testigos o los documentos, por medio de canales diplomáticos que incluían varios ministros locales y extranjeros. Véase: United States v. Paraffin Wax, 23 F.R.D. 289, 290 (E.D.N.Y 1959). Además, el tribunal que recibía la carta no estaba en la obligación de cumplir con lo solicitado. R.C. O'Brien, Compelling the Production of Evidence by Nonparties in England under the Hague Convention, 24 Syracuse J. Int'l. L. & Com. 77, 80 (1997). En reacción a lo costoso y gravoso de este proceso, Estados Unidos ratificó, en 1972, la Convención sobre la Obtención de Pruebas en el Extranjero en Materia Civil o Comercial. Convención sobre la Obtención de Pruebas en el Extranjero en Materia Civil o Comercial de la Conferencia de Haya de Derecho Internacional Privado. www.hcch.net/index_en.php?act=conventions.text&cid=82 (Consulta de 21 de mayo de 2009).
Este convenio hace más eficiente el proceso de requerir acceso a la prueba ubicada en otros Estados y obliga al país que recibe la solicitud a cumplirla.

de transporte permiten moverse de un lugar a otro con gran facilidad; pero en muchas ocasiones no será necesario, pues en la mayoría de los casos será suficiente la videoconferencia, el teléfono y el Internet.[84] También hay medios de obtener la declaración de testigos fuera de la jurisdicción que no estaban disponibles cuando se decidieron Gulf Oil y Koster.[85]

Los documentos localizados en el extranjero también pueden obtenerse más fácilmente que en 1947 cuando, por lo general, no se aceptaban fotocopias de documentos en

---

[84] M. Davis, supra, 324-326. Véase, en Westec Aerospace v. Rayteon Aircraft Co., 173 D.L.R. 4th 498 (B.C.C.A. 1999), confirmado en 197 D.L.R. 4th 211 (2001). La disponibilidad de la tecnología del video para asistir en la toma de un testimonio ha sido considerada en casos de forum non conveniens. Véase: Kurzke v. Nissan Motor Corp., 752 A. 2d 708 (N.J. 2000); Ryder Truck Pental Inc. v. Rosenberger, 699 So. 2d 713, 721 (Fla. Dist. Ct. App. 1997) Opinión disidente del Juez Shevin: "En cualquier caso los métodos modernos de transportación, las técnicas de video y las deposiciones pueden aliviar cualquier desventaja alegada". El videolink en vivo, a su vez, le ofrece al tribunal una amplia oportunidad de observar al testigo y dirimir su comportamiento y a las partes de interrogar y contrainterrogarlo. Si estas facilidades no están disponibles, el testimonio podría tomarse por teléfono en corte abierta con oportunidad de contrainterrogar. Véase: Alderman v. Sec., 104 F. 3d 285, 288 n. 4 (9th Cir 1997).

[85] La Convención de la Haya atiende específicamente esta situación y los Estados firmantes vienen obligados a acatar solicitudes en este sentido. Por otro lado, la Convención Interamericana sobre exhortos o cartas rogatorias permite que a una persona sujeta a la jurisdicción de un tribunal en Estados Unidos se le puedan enviar emplazamientos, notificaciones de citaciones para testificar y órdenes de comparecencia en países miembros, si bien actualmente este convenio no puede usarse para acceder a "pruebas de informes en el extranjero", porque Estados Unidos hizo una reserva bajo el artículo 2b de la Convención. Convención Interamericana sobre exhortos o cartas rogatorias, http://www.oas.org/juridico/spanish/Tratados/b-36.html (Consulta 21 de mayo de 2009).

evidencia porque la regla de la mejor evidencia requería el documento original.[86] Hoy puede admitirse un duplicado de un documento en la misma extensión que el original, salvo que exista una controversia esencial sobre la autenticidad del original o sea injusto admitir el duplicado en vez del original.[87] Además, cuando los documentos localizados en un país extranjero están en poder de una parte, se le puede ordenar a ésta producirlos.[88] Igual sucede respecto al descubrimiento de documentos en poder de terceras personas que no son partes en el pleito pero están sujetas a la jurisdicción del tribunal, aunque los escritos se encuentren fuera de la jurisdicción.[89] Por lo tanto, esto no es un

---

[86] Véase: E.W. Cleary & John W. Strong, The Best Evidence Rule: An Evaluation in Context, 51 Iowa L. Rev. 825 (1966).

[87] 32 L.P.R.A. Ap. IV, R. 3; Véase también R. 73. 32 L.P.R.A. sec. 1667; R. 1003 de las Reglas de Evidencia de Puerto Rico del 9 de febrero de 2009.

[88] En Puerto Rico, el fundamento para ello se encuentra en la Regla 31 de Procedimiento Civil, salvo que la petición sea indebidamente intrusiva, en cuyo caso debe usarse la Convención de la Haya sobre evidencia. 32 L.P.R.A. Ap. III, R. 31. Véase: Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522 (1987). La Regla 34 de Procedimiento Civil federal permite que un tribunal emita una orden para que una parte produzca un documento, aunque éste se encuentre en un país extranjero. 28 U.S.C., R. 34.

[89] En esos casos el tribunal emite un *subpoena duces tecum* u orden de producción de documentos. Cuando los tribunales de Estados Unidos no tienen jurisdicción sobre el tercero en poder del documento, producirlo es más difícil. Ello porque la mayoría de los ordenamientos jurídicos de los países que ratificaron la Convención de la Haya sobre evidencia no lo permiten y, por ende, hicieron una reserva al artículo 23 del convenio internacional. J. Chalmers, The Hague Evidence Convention and Discovery Inter Parties: Trial Court Decision Post Aerospatiale, 8 Tul. J. Int'l & Comp. L. 189, 192-94 (2000).

factor importante al tomar una decisión sobre *forum non conveniens.*[90] Por último, la posibilidad de ejecutar la sentencia es un factor que sólo debe tomarse en consideración en el análisis de *forum non conveniens* cuando el demandado no tenga activos en el Estado que adjudique en los méritos.

En cuanto a los factores públicos utilizados por los tribunales de Estados Unidos, no hay duda de que ante los avances de las comunicaciones y la flexibilización de las reglas procesales, la prueba de la ley extranjera es mucho más sencilla en nuestros días que en 1947.[91] Por otro lado, para considerar la congestión de casos en el sistema de tribunales habría que hacer un análisis comparativo entre los foros, asunto que no es tan complicado en el ámbito doméstico en el cual se resolvió Gulf Oil*,* pero sí en el internacional.[92] Por ello, es cuestionable que este factor se deba tomar en consideración. Finalmente, si decidimos no tomar en cuenta los factores públicos, no hay razón para tratar al demandante extranjero de manera diferente al doméstico. Los intereses privados de las partes, la nacionalidad o residencia son irrelevantes.[93]

---

[90] M. Davis, supra, pág. 340-341.

[91] *Id.,* pág. 354.

[92] *Íd.,* págs. 363-364.

[93] Recientemente se ha criticado el uso de la doctrina de *forum non conveniens* para desestimar demandas en daños y perjuicios causados por compañías estadounidenses en países de Latinoamérica, África y otros lugares en vías de

III

Como expresamos antes, en Puerto Rico no existe legislación ni jurisprudencia sobre la doctrina de *forum non conveniens*. Este recurso nos brinda, entonces, la oportunidad de determinar si incorporamos a nuestro ordenamiento procesal un instrumento similar a esta figura y, en ese caso, pautar los criterios y la metodología aplicable. A ese fin hemos examinado, con apertura y flexibilidad, las ventajas y los inconvenientes que han presentado las distintas normas utilizadas en diferentes lugares del mundo. Introducimos de esta forma una perspectiva de derecho comparado que es particularmente útil en la aplicación de una doctrina que tiene implicaciones para la armonización global de los sistemas jurisdiccionales.

---

desarrollo. R.A. Brand y S.R. Jablonski, supra., pág. 129. Entre los señalamientos está que la exclusión de los reclamos de los extranjeros en los tribunales de Estados Unidos interfiere con las presiones del mercado que permiten a los consumidores estadounidenses utilizar productos más seguros. E.T. Lear, National Interests, Foreign Injuries and Federal Forum Non Conveniens, 41 U.C. Davis L. Rev. 559, 575 (2007). Además, la desestimación por los tribunales de Estados Unidos de reclamos presentados por demandantes extranjeros contra corporaciones estadounidenses, invita a las naciones foráneas a acusar al sistema federado de proteccionismo y xenofobia. *Íd.*, pág. 601. Finalmente, algunos jueces y académicos argumentan que no debe concederse una petición de *forum non conveniens* cuando hay controversias importantes de política pública, como seguridad y salud pública, porque en éstas los intereses de Estados Unidos como domicilio de los demandados siempre serán iguales o mayores que los del foro extranjero. G.B. Born, International Civil Litigation in United States Courts, 3rd ed., La Haya, Kluwer (1996), págs. 336-343.

Cabe señalar que en nuestra esfera doméstica, es decir, dentro del sistema de tribunales de Puerto Rico, no se requiere un mecanismo como el que provee la doctrina de *forum non conveniens. S*omos una sola jurisdicción y de ser necesario, está disponible el mecanismo del traslado, regulado en las Reglas 3.1 y 3.5 de Procedimiento Civil.[94] Debemos plantearnos, sin embargo, la necesidad de un instrumento similar para atender casos que involucren el ámbito extra jurisdiccional.

La normativa procesal que hemos adoptado en nuestras diversas reglas procesales y de la prueba proviene de la tradición del *common law.*[95] De esa cultura jurídica adoptamos un concepto amplio de discreción judicial.[96] También incorporamos lo que se conoce como un *long arm statute,* en la Regla 4.7 de Procedimiento Civil, que permite adquirir jurisdicción sobre una persona con contactos mínimos en

---

[94] 32 L.P.R.A. Ap. III.

[95] "Nuestro derecho probatorio se nutre, por decir lo menos, del derecho probatorio federal y el de California. Las Reglas de Evidencia de Puerto Rico han sido tomadas de las Federales de Evidencia y, en ciertas ocasiones, del Código de Evidencia de California. Una que otra vez se ha adoptado una regla distinta, con matiz boricua…" E.L. **Chiesa** Aponte, **_Tratado de Derecho Probatorio_**, Publ. J.T.S., San Juan (1999), Prefacio. A su vez, las Reglas de Procedimiento Civil de Puerto Rico provienen de las Reglas de Procedimiento Civil Federales y de nuestra jurisprudencia. Véase: R. Hernández Colón, <u>Práctica Jurídica de Puerto Rico, Derecho Procesal Civil</u>, Michie de Puerto Rico, San Juan, 1997, págs. 12-13, 26.

[96] 32 L.P.R.A. Ap. III, R. 1. En los países que pertenecen a la tradición de *common law* los jueces tienen amplia discreción para actuar, a pesar de que un estatuto no les otorgue esa facultad explícitamente.

Puerto Rico. Por consiguiente, en nuestro país se pueden presentar litigios que no tienen contactos sustanciales con el foro, más aún cuando nuestros tribunales tienen jurisdicción general sobre la materia.[97]

El caso que tenemos ante nuestra consideración plantea una situación que puede repetirse y en un mundo globalizado podría ser tan sólo una de varias ocasiones en las que resulte necesario determinar si nuestro foro, u otro extranjero, es el apropiado. Por eso, para asegurar la organización eficiente de los recursos judiciales y para obtener una "solución justa, rápida y económica de todo procedimiento", reconocemos la utilidad de incorporar a nuestra jurisdicción un mecanismo que permita a los jueces rehusar ejercer su jurisdicción en circunstancias excepcionales, a favor de los intereses de las partes y la justicia. Al hacerlo, aprovechamos para establecer la metodología que deben utilizar nuestros tribunales al enfrentarse a una petición para paralizar una acción bajo este fundamento.

Hemos visto que los países civilistas que han otorgado a sus tribunales la discreción para declinar el ejercicio de su jurisdicción a favor de otro foro, la han circunscrito a circunstancias excepcionales. En nuestro caso, reconociendo

---

[97] Sin embargo, nuestro foro no será tan atractivo para los demandantes como podrían ser otros en el sistema federado, porque, a pesar de que admitimos los honorarios contingentes y tenemos un descubrimiento de prueba amplio, en los juicios civiles no interviene un jurado ni concedemos daños punitivos.

nuestra tradición legal mixta, nos parece conveniente recurrir al modelo propuesto a la Conferencia de la Haya de Derecho Internacional Privado, que es similar al recomendado por los principios de UNIDROIT, que han sido aceptados también por el *American Law Institute.* Se trata, como explicamos antes, de un análisis basado en el criterio del "foro claramente inapropiado". Este análisis, propuesto por especialistas de diferentes tradiciones de derecho, ocupa un justo medio entre la normativa estricta civilista y el mecanismo liberal del *common law*. A su vez, brinda mayor certeza y predictibilidad a la decisión de los tribunales en cuanto a la paralización de una reclamación, al compararla con el análisis que corresponde al criterio del "foro claramente más apropiado".

De entrada, determinamos que antes de analizar si procede acoger una moción de *forum non conveniens*, el Tribunal de Primera Instancia viene obligado a constatar que efectivamente tiene jurisdicción y competencia sobre las partes y la materia. Superado este elemento de umbral, el demandado que intente paralizar un litigio fundamentándose en la doctrina de *forum non conveniens* tiene que probar que el foro doméstico resulta claramente inapropiado y que hay un tribunal en otro Estado que también tiene jurisdicción y que es claramente el más apropiado para resolver la disputa. Si ello se demuestra, el tribunal doméstico debe paralizar los procedimientos y concederle término al demandante para que presente su reclamación en el foro adecuado. La demanda

original se desestimará si el demandante no presenta su acción en el foro alternativo en el tiempo concedido para ello o si una vez presentado su reclamo el foro alternativo asume jurisdicción. Por el contrario, si el demandante presenta su reclamación a tiempo y el foro alternativo determina no asumir jurisdicción, el tribunal doméstico original debe continuar con los procedimientos. El propósito de este mecanismo de regreso al foro original es asegurar que un tribunal competente efectivamente considere el reclamo de una parte diligente.

Para determinar si un foro es claramente inapropiado, se deben ponderar, entre otros, los siguientes factores privados: la conveniencia para las partes de litigar en el Estado donde se encuentra el foro; la localización de las fuentes de prueba y los mecanismos para obtenerlas; si la petición para paralizar se presenta en un momento oportuno;[98] los términos prescriptivos; el reconocimiento de sentencias

---

[98] Aunque no puede señalarse una etapa procesal específica, la moción de desestimación fundamentada en *forum non conveniens* debe presentarse antes de que el caso progrese demasiado, de manera que el demandante no incurra en gastos significativos al prepararse para juicio, ya que este es precisamente uno de los inconvenientes que la doctrina trata de prevenir. ORI, Inc. v. Yusuf Lanewala, 144 Lab. Cas. (CCH) P59, 428 (2000). Por consiguiente, la presentación de la solicitud en una etapa avanzada, como, por ejemplo, si se ha realizado el descubrimiento de prueba, puede conllevar el que se deniegue la petición. Por otro lado, se ha entendido que cuando el demandante tarda en presentar la moción, consiente a que el foro inicial vea el caso, particularmente cuando su participación en el proceso adelante la disposición de la acción en los méritos. Creamer v. Creamer, 482 A. 2d 346, 353 (D.C. 1984).

y la posibilidad de ejecutar la sentencia en el país donde el demandado tiene sus bienes.

Estos factores son ilustrativos, pues el foro de instancia debe escrutar la sustancia de la disputa y evaluar los criterios realmente pertinentes.[99] Por ejemplo, al evaluar el factor de acceso relativamente fácil a las fuentes de prueba, el tribunal debe sopesar si realmente se requiere presentar la prueba anunciada y si ésta es vital o pertinente a la causa de acción de los demandantes o para cualquier defensa potencial de la acción.[100] Además, al considerar los mecanismos para obtener la prueba, el tribunal debe estudiar las convenciones internacionales aplicables y si los Estados involucrados son partes signatarias de las mismas. Finalmente, resolvemos que los llamados "factores públicos" no deben tomarse en consideración por no ser acordes al propósito de la doctrina. Tampoco deben los tribunales discriminar a base de la nacionalidad o residencia habitual de las partes.

En fin, bajo el análisis que hemos adoptado se puede paralizar una demanda aunque se haya presentado en un tribunal con jurisdicción y sin propósito de causar daños a la otra parte, cuando la controversia tenga poca conexión con el foro doméstico, exponga al demandado a gastos

---

[99] Evidentemente, la jurisdicción del foro alternativo debe ser real y no hipotética. Asimismo, cuando el remedio ofrecido por el foro extranjero es insatisfactorio, éste no debe considerarse una alternativa adecuada.

[100] Véase Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988).

excesivos u otras inconveniencias e injusticias, y, claro está, si existe un foro con jurisdicción y competencia que pueda entender en la controversia. Por último reiteramos que la decisión de paralizar un procedimiento es de naturaleza discrecional, por lo que se revisará por los foros apelativos bajo el estándar de abuso de discreción. A ese fin, el foro sentenciador deberá especificar en su resolución cómo ha aplicado el análisis aquí adoptado a los hechos particulares del caso.

IV

En el presente caso el contrato de servicios profesionales en controversia fue suscrito en la República Dominicana, entre un abogado domiciliado y residente en dicho país y un cliente domiciliado y residente de Puerto Rico. El abogado se obligó a cobrarle una deuda, que estaba garantizada con un bien inmueble sito en la República Dominicana, a un domiciliado de ese Estado. De dicho contexto se deduce que la mayoría de las fuentes de prueba, sino todas, están localizadas en la Isla vecina.

Así las cosas, el abogado ejecutó la propiedad que garantizaba la deuda, pero el cliente no pagó la totalidad de los honorarios acordados. En consecuencia, el abogado presentó una demanda en cobro de dinero en los tribunales de Puerto Rico. De esto hace casi una década. A pesar de las dificultades que ha tenido este litigio, al día de hoy el descubrimiento de prueba está casi terminado. Se han

realizado deposiciones e interrogatorios y se han producido numerosos documentos suscritos por autoridades dominicanas, que están debidamente legalizados y son en español. Igualmente, la propiedad fue tasada por un profesional certificado y dicha prueba fue acordada y admitida por ambas partes. En vista de ello, ya se ha incurrido en el esfuerzo y gasto de preparar la evidencia producida en la República Dominicana para presentarla en los tribunales de Puerto Rico. Por otro lado, si la sentencia resultara a favor del demandante su ejecución sería menos onerosa para las partes si se dictara por nuestros tribunales, en vez de por los foros dominicanos, pues el demandado es domiciliado de Puerto Rico.

A raíz de lo expuesto, entendemos que los tribunales de Puerto Rico no son claramente inapropiados para resolver esta controversia. El demandado no demostró que le perjudica que la controversia sea atendida por los nuestros foros. Por el contrario, sería gravoso para las partes y contrario al principio de justicia rápida y económica, desestimar la demanda para que se presente en los tribunales dominicanos. Resolvemos que no procede desestimar la demanda instada por el licenciado Ramírez Sainz por razón de que nuestro foro no es claramente inapropiado.[101]

---

[101] El licenciado Ramírez Sainz alega que el Tribunal de Apelaciones erró al variar la ley del caso, ya que en una ocasión anterior había dispuesto de la solicitud de desestimación basándose en la doctrina de *forum non conveniens*. Sin embargo, luego de un detenido examen del expediente hemos verificado que en ningún momento procesal anterior a la sentencia aquí revisada se había evaluado la

Tenemos, entonces, que determinar si procede que el tribunal de instancia celebre una vista plenaria o si debemos reinstalar la sentencia dictada sumariamente. Hemos visto que el demandado presentó los documentos sobre la alegada controversia respecto al deslinde ilegal, por primera vez, ante el tribunal apelativo, es decir, el tribunal de instancia no los tuvo ante su consideración. Por tanto, el Tribunal de Apelaciones no podía tomarlos en consideración.

El Reglamento del Tribunal de Apelaciones y el Reglamento del Tribunal Supremo permiten que los recursos de apelación y de *certiorari* vayan acompañados de apéndices, con el propósito de fundamentar las alegaciones que se hacen en los escritos principales.[102] Sin embargo, sólo pueden incluirse en los apéndices de los recursos aquellos documentos que el Tribunal de Primera Instancia tuvo ante su consideración.[103]

El tribunal intermedio no debió haber examinado los documentos que el Tribunal de Primera Instancia no tuvo ante su consideración. Sin embargo, al foro de instancia sí se le

procedencia de la desestimación fundamentándose en la mencionada figura.

[102] Véase: Regla 74 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-A R. 74; Regla 34 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A R. 34.

[103] Regla 74(B) del Reglamento del Tribunal de Apelaciones, supra; Regla 34(D) del Tribunal Supremo, supra. Véanse: P.N.P. v. Rodríguez Estrada, Pres. C.E.E., 123 D.P.R. 1, 35-36 (1988); Belmonte v. Mercado Reverón, Admor., 95 D.P.R. 257, 263-264 (1967).

evidenció el segundo proceso de impugnación de título presentado en la República Dominicana y no lo mencionó en su sentencia. Las certificaciones de que dicho segundo pleito había terminado y que no habían procedimientos de apelación o casación pendientes se presentaron por primera vez, también, ante el Tribunal de Apelaciones. Quiere ello decir que cuando el tribunal de instancia dictó sentencia aún quedaban controversias pendientes sobre el cumplimiento de las obligaciones contractuales. Versando estas controversias sobre hechos esenciales, el tribunal apelativo intermedio no erró al revocar la sentencia sumaria y ordenar que se celebrara el juicio.[104] En el mismo se debe probar si el demandante cumplió con su obligación contractual y, por ende, si procede la reclamación en cobro de dinero.

Por los fundamentos expuestos, se modifica la sentencia del Tribunal de Apelaciones para revocar la orden emitida al tribunal de instancia para que determine si es el foro más adecuado para resolver el litigio y se confirma en cuanto revoca la sentencia sumaria para que se celebre la vista en los méritos. Se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores conforme con lo aquí dispuesto.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

---

[104] Véase: 32 L.P.R.A. Ap. III R. 36; Nissen Holand v. Genthaller, 2007 T.S.P.R. 197; Echandi Otero v. Stewart Tittle Guaranty Co., 2008 T.S.P.R. 126; E.L.A. v. Cole Vázquez, 2005 T.S.P.R. 46.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Fernando Ramírez Sainz<br>Peticionario<br><br>v.<br><br>Alexander Cabanillas, Fulana de Tal y la Sociedad legal de Gananciales compuesta por ambos<br>Recurridos | CC-2005-553 | *Certiorari* |

*SENTENCIA*

En San Juan, Puerto Rico, a 6 de octubre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se modifica la sentencia del Tribunal de Apelaciones para revocar la orden emitida al tribunal de instancia para que determine si es el foro más adecuado para resolver el litigio y se confirma en cuanto revoca la sentencia sumaria para que se celebre la vista en los méritos.

Se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores conforme con lo aquí dispuesto.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Interina.


Juliana Mosquera Soler
Secretaria del Tribunal Supremo Interina